Good morning, Your Honor. My name is Robert Powell, appearing here on behalf of Mr. Ahmad. I would point out to the Court that Mr. and Mrs. Ahmad are here today in the Court to watch the proceedings. Mr. Ahmad is married to a United States citizen and has one U.S. citizen daughter now aged about two-and-a-half years old. If he is deported to Afghanistan, then his wife and daughter will accompany him. His wife is firmly committed for religious reasons to maintaining the marital union. What is at stake for Mr. and Mrs. Ahmad is really a matter of life and death. The current Department of State travel advisory specifically notes that there is an ongoing threat to kidnap and assassinate U.S. citizens and NGO workers throughout the country. What Mr. Ahmad faces really is torture and death. He has presented credible testimony. I thought his problem was from the Taliban. Not just the Taliban. There are current government officials, most prominently General Rashid Dostum, who personally knows Mr. Ahmad and his family. It's been a long time since Mr. Ahmad's been there. It has been a long time. He's currently in power. The evidence shows he personally knows Mr. Ahmad. Let me ask you about something else. Actually, what's really on my mind. It's 8 U.S.C. 1101 A48B. That's what's really on my mind in this case. It says a reference to the term of imprisonment is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence. It seems like a fortiori it would include the term ordered by a court of law regardless of release into a less onerous institution where the person is still not free. So I think I understand. First of all, I would point out that that issue is not relevant to Mr. Ahmad's claim under the Convention Against Torture. No, I agree. And your opening seems to be focusing solely on the Convention Against Torture claim because if we apply that statute and find that he did suffer a term of imprisonment for more than five years, then the only claim that would remain viable to him would be the cat claim. Is that right, Mr. Ahmad? With respect to the 212C claim, yeah, we are prepared to withdraw that claim, the 212C claim. Okay. There is, I think, still a question about whether the eligibility for withholding of removal, which is separate from the Convention Against Torture claim. That would rely on whether or not the crime that he was convicted of would be considered a particularly serious crime. And if we find that it was, then he's ineligible for that form of release as well. That's correct. If it's determined that he's been convicted of a particularly serious crime, then he's not eligible for withholding of removal. Okay. I don't know if that answers your question, Judge Kleinfeld. I think what you're telling me is your cat claim survives the answer, no matter what it is, to 1101A48B, and I think you are correct. But getting away from the cat claim for just a moment to 1101A48B, I really don't understand why community confinement wouldn't be imprisonment. Yeah. Again, that... I understand that under the cases you cited, it isn't, but those are guidelines cases, as I recall, different purpose. I think, again, the issue about 101A48 relates to the 212C claim, which we're willing to withdraw and not pursue. Okay. Okay. So you want to focus on the cat claim? On the cat claim. And I do want to also pursue the withholding claim. On the cat claim, he's been here for, what is it, 30 years or something? Yes. Well, a little bit less than 30 years, maybe 20, I think, in 1980 is approximately when he came. No matter how much anyone hated him 30 years ago, is it reasonable to think he's going to be tortured if he goes back now? Absolutely. I think, in accordance with this court's case law, the question here... So Mr. Ahmad filed a motion to reopen based on changed circumstances, and we submit that the Board of Immigration Appeals have used its discretion in denying that motion to reopen. There's overwhelming evidence in the record that Mr. Ahmad is in danger of being tortured or killed. With respect to this gentleman, the general, Mr. Dostum, it's very clear that he was... He personally knows the family. He's a classmate of Latif Ahmad. He personally ordered Mr. Ahmad's arrest early in the 1970s or 80. Is he in power now? He is in power now. He's the Afghani Army Chief of Staff. An expert witness submitted testimony or submitted a declaration into the record, specifically noting that Dostum has a history of settling old scores, and old scores are still being settled. This is a... Mr. Ahmad is recognized as a political enemy of Dostum. There's uncontradicted testimony that Mr. Ahmad will be recognized because of who he is and who his family is when he goes back to Afghanistan. He will be recognized. What does the country report tell us? I'm sorry? The country reports as well are very compelling in terms of the risk that Mr. Ahmad and his family face. The Department of State country reports states that there have been reports of politically motivated or extrajudicial killings by the government and its agents. The country information provided by the United Kingdom... I haven't really read this record to think it's been a long time, not much problem anymore. So if there's something here that really shows there is, point for it. The administrative record on pages 93 and 94, I can pull those out if you like, but I'm basically quoting or close to quoting that, what's in the Department of State country reports. There continue to be instances in which security and factual forces committed extrajudicial killings and torture, and there were reports of politically motivated or extrajudicial killings by the government or its agents. Any geographic limitations? No, that's throughout Afghanistan and in particular in Kabul. The information in the record specifically notes that the risk is in Kabul as well as other parts of the country. Also relevant is the... So other parts, still other parts of the country don't have the risk? No, they have, there is risk throughout the country. Throughout the country? Yes. I don't quite read the report that way. The Department... Why is, and the reason this fellow is any different from any other person in Afghanistan is that the chief of staff of the army was an enemy of his 30 years ago. That's part of it, that's not all of it. In addition, there are several other individuals who are currently in power in the Afghan government who like Dostum, knew him, knew his family. These are now high-ranking government officials, so, and they are also political opponents of Mr. Ahmad and his family. I can barely remember people that didn't like me or that I didn't like 30 years ago. Well again, the, in addition, in addition to all the prior relationships, the evidence in the record... 1977. ...the evidence in the record shows that individuals now arriving in Afghanistan who have been recognized as educated, educated Afghans, not associated with the Taliban, are particularly at risk. The country reports provided by the United Kingdom say that these are, quote, prime targets for human rights abuses. I thought we sent an army in and threw the Taliban out of power, and they still have their little pockets. That army is here, but it does not have complete control over the situation. There continue to be people who are, I mean, our country reports say there are, there continue to be extrajudicial killings. The department, the travel advisory also, in the administrative record at page 91, is quite compelling, recognizing again that foreigners in Kabul and elsewhere throughout the country are targeted. We would have to declare that the government of Afghanistan is unable to do what it says to protect petitioner and his family from potential reprisals by long-standing enemies of his family, despite the presence of an international, multinational peacekeeping force in Afghanistan, which is trying to restore order, if that's what you're asking. This Court would not have to reach that, the merits of the claim. Again, it's a motion to reopen, and what has to But clearly the Court cited, did it not, the fact that there was, that we have troops in Afghanistan that are basically trying to preserve democracy and The Board didn't talk about that at all. I mean, it didn't get to that issue, really. All we have to, what we're trying to show here is that Mr. Ahmad has at least presented a prima facie case. There has not been a trial or a hearing on his cash claim. We have to find that the Board abused its discretion, so can we not consider the fact that we currently have United States troops on the ground in Afghanistan? I don't think that's really appropriate for this Court. I mean, the Board of Immigration Appeals, when it issued its decision, was a very sketchy, it's about one sentence. Your burden is a lot greater on a motion to reopen than it would be on a direct petition, because the Supreme Court decision in Doherty says they're discretionary and disfavored. So you have to show not just that they were, that a case can be made for cat relief, you have to show that they were unreasonable, arbitrary, and capricious in denying a second shot to Ahmad to make his case. Well, first of all, this is not a second shot as such. The Board of Immigration Appeals recognized that there are changed conditions in Afghanistan. And so this is really his first shot to show that he is likely to be tortured or persecuted in light of the changed circumstances in Afghanistan. Second, yes, it is, we do have to establish. But what the BIA did, it was a one-sentence decision, they just adopted the IJs, and the IJ does deal very thoroughly with the cat claim at pages 5 through 7. But, Your Honor, there was, after that hearing before the immigration judge, there were changed circumstances in Afghanistan, primarily relating to... Yeah, but they made it better for Ahmad instead of worse, because we sent the military in and overthrew the government. No, but none of that is in the record. You don't think we can take judicial notice of the fact that there's been a change of government in Afghanistan? Well, but then if Mr. Ahmad is entitled to a chance to explain why, in spite of that fact, he's still likely to be tortured and assassinated. Did his motion to reopen say that he needed to explain that despite the change of government he personally was still at risk? Yes. There's an expert witness who looked at that evidence, said in light of the current conditions in Afghanistan, Mr. Ahmad has a real reason to fear that he would be targeted for torture. How do we overcome the aggravated felony? The aggravated... So that's not relevant to the Convention Against Torture claim. Okay. Mr. Pott, the country condition report at AR-95 specifically addresses the presence of NATO forces, does it not? Well, but that does not undermine the particularized evidence that he has, showing that he in particular is likely to be a prime target for torture. But isn't that, I mean, that's the response to Judge Kleinfeld's concern. We don't need to take judicial notice of the fact that troops are on the ground there. The country condition report specifically talks about that. The question is whether or not the Board abused its discretion in denying the motion to reopen. What Mr. Ahmad has to do is establish a prima facie claim that he's a prima facie cat claim. This case is similar. The irrelevant Ninth Circuit decision is the Kamal Haas case in which the Ninth Circuit has said in order to make out a prima facie claim, a person has to present evidence showing that there are substantial grounds for believing that a person would be in danger of being tortured. That's a standard that ought to be followed. Let's see. What are the pages that I should look at for the motion to reopen showing that his personal circumstances distinguish him from the general run of anti-communist, anti-Russian people? You mean, well, the... What the IJ says is his problem was he was anti-communist and anti-Russian and they're gone. And you say that the motion to reopen shows that because of his individual circumstances, he was still at high risk of being tortured. So I just want to look at exactly what the words are. I would point to the administrative record, pages 44 and 45, which is the expert opinion that was offered in connection with the motion to reopen, which says that this person, Dostum, has a... Wait. 44 and 45 is the order of the immigration judge. Oh, you know, Your Honor, I think there were two... This is consolidated. They're two separate files. So I'm probably referring to the 06 administrative record. The Kamalthus case in Ninth Circuit, in which the standard to use a person is entitled to have the case reopened, who's applying for Convention Against Torture Relief, if there are substantial grounds, if the person presents substantial grounds for believing that there's a danger of torture. That's clear. There's overwhelming evidence that Mr. Ahmad has met that standard. In fact, the evidence here we would submit is enough under Ninth Circuit case law to establish that the application ought to be granted. The Neuro case, a Ninth Circuit case in 2005... This 44 and 45, you're not talking about the U.K. report, are you? No, I'm not. The Home Office report from the United Kingdom. I'll find it later. I have... In my administrative record, I have the declaration of Robert Canfield, Professor Robert Canfield, the expert witness, starts at the administrative record on page 42. Thanks. I do recognize I'm out of time, and so I would reserve a minute, if I can, for a rebuttal. Thanks. Counsel? May it please the Court, my name is Anne Tumai. I represent the United States Attorney General. Petitioner has presented three main issues before the Court. First, whether or not there's any retroactivity concerns regarding the effect... I think what we've got here is the Catt claim, based on the concession we made this morning. Yes, Your Honor. Ultimately... You could start on the Catt claim. Yes, Your Honor. And there's two related issues regarding the Catt claim. First is whether or not the record evidence compels a finding that he is eligible. And second is whether or not the Board acted beyond its broad discretion in denying the motion to reopen. What should we look at to show that there was not an abuse of discretion? Your Honor, in terms of that, Petitioner has to establish that there was some sort of arbitrary or capricious or... Yes, and what should we look at to show that there wasn't? Your Honor, we'd look at the entire record as far as what was previously before the agency as well as what was... There are a lot of pages. It would be kind of nice if you could point to something and say, look at this. They had a good reason for denying the motion to reopen. The other side points to the Chief of Staff as being the biggest problem. Yes, Your Honor. Confront upon return. Do we have anything from the State Department? Do we have any contra evidence? Has this happened before? What's the history of this man? What's in the record? Your Honor, if the Court were to review the record and look at the State Department documents, including those pages that were referenced by Petitioner, pages 40, 40, 45, 93, 94, they all are premised on general conditions of upheaval and violence in Afghanistan. The Court needs to bear in mind that it's Petitioner's burden to establish prima facie eligibility based on his personal circumstances. Look, I'm giving you a chance to do something here. Yes, Your Honor. I would imagine you flew from Washington, D.C. and studied this record the whole time. It's what any lawyer would do. And you must have said, wow, this is the juicy part, and put the tab on it to show me why. I mean, that's what all the rest of us would do. Yes. All I have to do is look at this and I can see they had a good reason. And I just want the page numbers. Yes, Your Honor. And pages 93 to 94, if Your Honor will excuse me and I can retrieve the record as well. Your Honor, if Your Honor refers to, in fact, the entire State Department report that provides general conditions on the human rights issues in Afghanistan, it states throughout that there are problems in Afghanistan, generally speaking. And that isn't sufficient for Petitioner to establish that the board Why isn't the chief of The Petitioner says the guy who's now the chief of staff of the Afghan army hates his guts and is going to get him tortured. Why shouldn't we believe that? Your Honor, because Petitioner hasn't established that General Dalston, within the past 30 years, is interested in Petitioner or is still aware of him for any particular reason. It's incumbent upon him to establish that it's not just a broad, generalized risk that he's subjected to, but rather that there's a clear probability that he will be tortured. And if he's alleging that it's by General Dalston, he has to establish some sort of connection between General Dalston and himself. All he's shown is that General Dalston has been appointed in an influential position that 30 years ago he had some connections with Petitioner's family, but there's nothing here to establish that General Dalston would maintain any interest in Petitioner. The burden of proof is high, and as this Court has stated in Kamalthus, that there's a distinction in what Petitioner has to prove up to qualify for cat protection. Is there something to show that he wouldn't? Your Honor, the, whether it's looking at the State Department reports that establish, per those pages, that there are general problems in Afghanistan, that they, however, there are U.N. peacekeeping forces there, that there are also U.S. troops that are there, and if looking at the country reports, one can take a look at it and see, well, there may be a problem that Petitioner may be exposed to, but there's also a likelihood that everybody else is subject to similar concerns, but they're not the same as they were 30 years ago. I think what the country reports show is we've thrown the Taliban out. The Russians are gone. The Afghans defeated the Russians with some help from us. Yes, Your Honor. So those problems are gone, but there are still extrajudicial killings, and there's still torture, and there's no place in the country where there isn't any. And then the Petitioner says, this guy, can't remember his name, Dustin or something, hates my guts. And I meant what I said to you about the plane. I mean, it's all I do on an airplane, I imagine. Yes, Your Honor. Lawyers do. So I'm just looking for something more specific than what you've said. Then the country reports that state that... So far, all I've got is I know that we don't have to worry about the Russians and the communists anymore. They're getting them. He hasn't been tortured before. On the other hand, this very powerful man hated him 30 years ago. Maybe he'll still hate him. And there is some extrajudicial torture and killing that goes on there. That's what I know so far. Yes, Your Honor. Do you have any comment on the effect of a particularly serious felony? Yes, Your Honor. In terms of his claims that there is a retroactivity problem, there is none. Not when there isn't even any retroactive effect of his conviction from 1991. His conviction for child molestation in the second degree on four separate counts would be considered a particularly serious crime even prior to Ira-Ira such that there wouldn't be a retroactivity concern. Is there any pending case in the Supreme Court that would require us to defer submission in this case? Your Honor, I'm not aware of any decision that's pending before the Supreme Court at least in the context of whether or not Petitioner has any retroactivity argument on the withholding claim. How about on the particularly serious crime? Your Honor, I'm not aware of any. I'm not certain as to what Your Honor is referring to. But in Petitioner's case, then, his real argument is as to whether or not the aggravated felony definition applies to him. And this Court has already resolved that issue and determined that there is no retroactivity problem whether it was the Court's decision in Ergon Ion or subsequent decisions. Here, it's not so much a question of whether he has established that his conviction applies as a preclusion to his eligibility for withholding. It's rather whether or not the definition applies to him. And the Court has resolved that question and stated that it does apply such that he cannot establish eligibility for withholding or removal. Your Honor, again, as to his eligibility for cap, Petitioner has a high burden of proof here. And in looking at the State Department records... His burden, it's not the even 10% that I think some court applied in asylum. I can't remember which case it was that we had where we used that phrase for asylum. I think here it's more likely than not. Is that right? Yes, Your Honor. And as this Court stated in Kamalthas, the ability to establish a well-founded fear is not the same as when one is establishing a clear probability that the individual applicants... Is the phrase, well-founded fear, is the phrase probability or is the phrase more likely than not? Your Honor, in order to establish cap protection, it is more likely than not or a clear probability. Clear probability has been defined as meaning that he has to establish it is more likely than not he will be tortured. So he has to prove more likely than not? That he will be tortured, yes, Your Honor. And the well-founded fear standard applies only in the context of asylum. Here, he's seeking cap protection. And reviewing the entire record, he has not established specifically that he satisfied this a prima facie eligibility improving up he would likely be tortured. Since that's the case, when looking at the record as a whole, Petitioner has not established that the facts compel a finding that he's eligible for cap protection, nor has he established that the Board has abused its discretion when considering the fact that nearly three decades have passed. The State Department records reveal general conditions of violence and upheaval. However, there is nothing in the record to show that there's a particularized risk after 30 years. Therefore, the Court should affirm the Board's decision in denying the motion to reopen and uphold the IJ's decision in denying cap protection as well as finding that he wasn't eligible for withholding a removal. Thank you, counsel. Although you went over time, you can take one minute. I just want to make a follow-up on one point. There was a discussion about whether or not Mr. Ahmad has to show that it's more likely than not that he would be tortured. That's not really the right standard, at least not at this stage. It's a motion to reopen context. What he has to show is a prima facie case. Under the Kamalfas case, the Ninth Circuit decision, what Mr. Ahmad has to show is not more likely than not, but he has to show a substantial grounds to believe that there's a danger of torture. We would submit that he more than meets that burden. What case is that? Kamalfas. I think it's K-A-M-A-L-T-H-A-S. In any event, the Board of Immigration Appeals, in its denial of the motion to reopen, does not properly apply that standard and does not give an individualized assessment of the particular dangers that Mr. Dustin faces. Thank you, counsel. Ahmad v. Gonzalez is submitted.
judges: Beezer, Kleinfeld, Tallman